IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Remanded by Supreme Court April 22, 2004

## STATE OF TENNESSEE v. RENNE EFREN ARELLANO

**Appeal from the Circuit Court for Maury County**
**No. 12120    Robert L. Jones, Judge**

---

**No. M2004-01292-CCA-RM-CD - Filed June 29, 2004**

---

This case presents an appeal to this court after remand by order of the Tennessee Supreme Court. The Appellant, Renne Efren Arellano, appeals from the sentencing decision of the Maury County Circuit Court.  In a negotiated plea agreement, Arellano pled guilty to arson, eight counts of aggravated assault, and felony possession of a weapon and received an effective twelve-year sentence as a Range I standard offender.  The manner of service was to be determined by the trial court. Following a sentencing hearing, the trial court denied any form of alternative sentencing and imposed total incarceration for the twelve-year sentence.  On appeal, Arellano contends that the trial court erred in not sentencing him to any form of alternative incarceration.  Finding no error, the sentences of the trial court are affirmed.

**Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

William C. Barnes, Jr., Columbia, Tennessee, for the Appellant, Renne Efren Arellano.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Jennifer L. Bledsoe, Assistant Attorney General; T. Michael Bottoms, District Attorney General; and Joseph L. Penrod, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION ON REMAND**

**Factual Background**

On October 1, 2000, the Appellant, then nineteen years old, and "Danny, Larry, Mario, John, Michael, [and] Michelle" were at the Appellant's home drinking alcohol.  At approximately 3:00 a.m., the group decided to make "Molotov cocktail bombs" and throw them at Patricia Hood's trailer. According to the Appellant, the following events transpired:

We had all gotten pretty drunk. Michael already had a grudge with the people who lived in the trailer that got burnt. He started trying to talk everyone to do something to their house. Michael came up with the idea of making cocktail bombs to throw at their home. So he got gasoline from our lawn mower gas jug and filled up some of the beer bottles that we had been drinking from. . . . We all drove down to their trailer. Mario and I in my car and everyone else in John's car. We all got out and walked to their trailer. I can't really remember who threw the first bottle, but soon as the bottle exploded I threw my bottle on the ground and ran back to my car. . . .

Patricia Hood was inside the trailer along with Cassandra, Amanda, Jessica, and Alexsandra Hood, Murray Smith, Trent Litwheller, and Santos Lane. Patricia Hood was awakened by Smith, who told her that the trailer was on fire. Everyone safely exited the trailer without suffering any physical harm; however, Jessica Hood was covered with black smoke and taken to the hospital, where she was later released. According to Patricia Hood, seventy percent of the trailer was destroyed and it was unlivable.

Thereafter, a Maury County grand jury indicted the Appellant for one count of aggravated arson, a class A felony, eight counts of attempted first degree murder, class A felonies, and one count of felony possession of a weapon, a class E felony. A negotiated plea agreement allowed the Appellant to plead to one count of arson, a class C felony, eight counts of aggravated assault, class C felonies, and felony possession of a weapon in exchange for an effective twelve-year sentence.[1] The manner of service of the twelve-year sentence was to be determined by the trial court.

On February 1, 2002, a joint sentencing hearing was held for the Appellant and Mario Estrada, who was also jointly indicted for the offenses. The trial court denied any form of alternative sentencing and imposed total incarceration for the entire twelve-year sentence, finding that:

So that's how serious this case is, that if this case had been tried by a jury and they'd been convicted of the aggravated arson charge for setting fire to a structure occupied by human beings. Just one human being would have been enough. It didn't matter whether it was eighteen month old or a fifty year old. It didn't matter whether it was a male that your gang member friends were in some sort of hostile relationship with or whether it was the girlfriend of those young men, the mother of those girlfriends or the young children of those girlfriends.

Apparently, none of that mattered to these two at that time. Their conduct is not lessened by the fact that other members of this group, whatever you call them,

_____

[1]The Appellant received three-year sentences for the arson and each aggravated assault conviction and a one-year sentence for felony possession of a weapon. The arson conviction and three of the aggravated assault convictions were run consecutively to one another. The remaining aggravated assault convictions and the weapon offense were run concurrently to the other convictions, resulting in an effective twelve-year sentence.

participated with them. The fire of either one of these, pouring out the beer bottles full of gasoline with a wick in it, could have done the same damage. Any one of them could have done it.

They each have equally horrible juvenile records, beginning and continuing regularly for a period of five years before October of 2000. Those prior records involve acts of violence against fellow human beings, acts involving weapons, acts involving theft, acts involving truancy. . . . [T]hey each have theft, truancy, assaults and weapons violations. They've each been incarcerated twice before for up to six months on each occasion.

. . .

They've got horrible records. They were involved in terrorist activities at a very dense trailer park here in Maury County and they almost killed eight people.

This appeal followed. When this appeal initially reached this court, a panel of this court vacated the convictions and remanded the case, holding that the guilty pleas were invalid as aggravated assault was not a lesser included offense of attempted first degree murder. *State v. Renne Efren Arellano*, No. M2002-00380-CCA-R3-CD (Tenn. Crim. App. at Nashville, Feb. 26, 2003). However, the State obtained permission to appeal to the Tennessee Supreme Court. Our supreme court reversed the decision of this court and remanded the case for a determination of the appeal on the merits. *State v. Renne Efren Arellano*, No. M2002-00380-SC-R11-CD (Tenn. at Nashville, Apr. 22, 2004). The case is now properly before this court.

## ANALYSIS

The Appellant asserts that, "based on the facts and circumstance of this case, though the crime in question involves the threat of human life, the youth and circumstances of the crime weigh in favor of the Defendant being given the opportunity to rehabilitate through community corrections and/or probation." Specifically, he argues that he is entitled to an alternative form of sentencing because: (1) due to his youth, he lacked substantial judgment in committing the offenses; (2) the crime was committed under unusual circumstance that it is unlikely that a sustained intent to violate the law motivated the criminal conduct; (3) he acted under duress or under the domination of another person; and (4) he was intoxicated. *See* Tenn. Code Ann. § 40-35-113(6), (11), (12), (13) (2003); *see also State v. Zeolia*, 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996) (permitting use of enhancing and mitigating factors as relevant to Tennessee Code Annotated section 40-35-103(1) considerations).

When the sentencing court properly considers the relevant sentencing considerations, this court conducts a *de novo* review with the presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (2003); *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn.

1991).  The burden is on the Appellant to show the impropriety of the sentence.  Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

Because the Appellant was convicted of class C and E felonies, he is entitled to the presumption that he is a favorable candidate for alternative sentencing.  *See* Tenn. Code Ann. § 40-35-102(6) (2003).  We note, however, that "the determination of whether the Appellant is entitled to an alternative sentence and whether the Appellant is entitled to full probation are different inquiries."  *State v. Boggs*, 932 S.W.2d 467, 477 (Tenn. Crim. App 1996).  Where a defendant is entitled to the statutory presumption of alternative sentencing, the State has the burden of overcoming the presumption of evidence to the contrary.  *State v. Bingham*, 910 S.W.2d 448, 455 (Tenn. Crim. App.*), perm. to appeal denied,* (Tenn. 1995), *overruled on other grounds*, *State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2000).  Conversely, the defendant has the burden of establishing his suitability for full probation, even if the defendant is entitled to the statutory presumption of alternative sentencing.  *Id.; see Boggs*, 932 S.W.2d at 477.

When imposing a sentence of total confinement, the trial court should base its decision on the following considerations:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1) (2003).  Additionally, the potential or lack of potential for rehabilitation of a defendant should be considered in determining whether he or she should be granted an alternative sentence.  Tenn. Code Ann. § 40-35-103(5).

Upon *de novo* review, we find that the Appellant falls into all three categories listed in Tenn. Code Ann. § 40-35-103(1).  The Appellant, who was only nineteen years old at the time of the present offenses, has an extensive juvenile record.  *See* Tenn. Code Ann. § 37-1-133(b) (2001); *State v. Bobby Holt, Jr.*, No. W2002-02443-CCA-R3-CD (Tenn. Crim. App. at Jackson, Aug.15, 2003), *perm. to appeal denied*, (Tenn. 2003).  His juvenile record includes delinquent adjudications for shoplifting, aggravated robbery, and possession of marijuana, two delinquent adjudications for theft, and four delinquent adjudications for assault.  This history demonstrates a pattern of ongoing criminal conduct.

Second, alternative sentencing would depreciate the seriousness of the Appellant's actions by reducing the severity of the crimes committed.  To deny probation or another alternative sentence

based on the seriousness of the offense, "'the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree,' and the nature of the offense must outweigh all factors favoring" an alternative sentence. *Bingham*, 910 S.W.2d at 454 (quoting *State v. Hartley*, 818 S.W.2d 370, 375 (Tenn. Crim. App. 1991)). The trial court noted,

> Their conduct is not lessened by the fact that other members of this group, whatever you call them, participated with them. The fire of either one of these, pouring out the beer bottles full of gasoline with a wick in it, could have done the same damage. Any one of them could have done it.

The Appellant participated in hurling "Molotov cocktail bombs" through the window of a mobile home, with no regard for the lives of the eight sleeping people inside. We agree with the trial court that the Appellant's conduct was truly reprehensible, violent, and shocking.

Third, measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the Appellant. The pre-sentence report reflects that the Appellant was placed on probation on May 23, 1996, and again on March 31, 1997. He was remanded to the custody of the Department of Children's Services on September 29, 1997. After his release, he violated a court order and was again remanded to the custody of the Department of Children's Services on February 3, 1999. On April 30, 1999, he was adjudicated delinquent for committing theft, and the juvenile court ordered, "Stay in DCS custody (Released at age 18)."

Finally, it is true that a general purpose of the Sentencing Act is to encourage restitution to victims when appropriate. Tenn. Code Ann. § 40-35-102(3)(D) (2003). The Appellant argues that he is willing to make restitution and, therefore, should be granted a sentence that facilitates such restitution. *See, e.g., State v. Barbara D. Frank*, No. 03C01-9209-CR-00303 (Tenn. Crim. App. at Knoxville, Dec. 22, 1993). Nevertheless, for the reasons discussed above, we conclude that the State has met its burden and adequately demonstrated that the circumstances of the offense and the history of this Appellant call for confinement in the Department of Correction. This issue is without merit.

## CONCLUSION

Based upon the foregoing reasons, we find that the trial court did not err in ordering total confinement. The judgments of the Maury County Circuit Court are affirmed.

_____
DAVID G. HAYES, JUDGE
